UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

|
LAKELAND REGIONAL HEALTH SYSTEM,                     |          No. 1:08-cv-72
a Michigan corporation,                              |
LAKELAND HOSPITALS AT NILES AND ST.                  |          Honorable Paul L. Maloney
JOSEPH, INC., a Michigan corporation,[1] and         |
LAKELAND REGIONAL HEALTH SYSTEM                       |
GROUP HEALTH PLAN,                                    |          Magistrate Judge Joseph G. Scoville
an ERISA self-funded employer group health plan,     |
                                                     |
        Plaintiffs,                                   |
                                                     |
              v.                                      |
                                                     |
WALGREENS HEALTH INITIATIVES, INC.,                   |
f/k/a WHP Health Initiatives, Inc., a foreign corporation, |
and RITE-AID CORPORATION, a foreign corporation,     |
                                                     |
        Defendants.                                   |

---

**OPINION and ORDER**
**Granting Defendant WHI's Motion to Dismiss Count 3;**
**Directing Defendant WHI to File an Answer to Counts 1 and 2**

        This is an ERISA action with pendent tort and contract claims under Michigan law.

Defendant Walgreens Health Initiatives Inc.'s ("WHI") has filed a Rule 12(b)(6) motion to dismiss

count 3, negligence, for failure to state a claim on which relief can be granted.  WHI contends that

the negligence claim does not allege any duty independent and distinct from the contractual duties

the breach of which is the subject of count 2.  The plaintiffs filed an opposition brief, WHI filed a

reply, and plaintiffs with leave of court filed a sur-reply.  Having considered the briefs and

---

        [1]WHI states that this plaintiff conducts business under the name "Lakeland Regional
Medical Center."  Def's Reply at 9 n.3.

determined that oral argument is unnecessary, the court will grant the motion and dismiss count 3.

## BACKGROUND

Plaintiffs Lakeland Regional Health System, doing business as Lakeland HealthCare, and Lakeland Hospitals at Niles and Saint Joseph, Inc., doing business as Lakeland Regional Medical Center (collectively "Lakeland") are Michigan corporations with their principal places of business in Michigan. *See* Complaint filed January 18, 2008 ("Comp") ¶¶ 1-2. In 1996, Lakeland instituted the Lakeland Regional Health System Group Health Plan ("the Plan") as a self-funded employer group health plan within the meaning of the Employee Retirement Income Security Act of 1974 ("ERISA"). Lakeland is the Plan sponsor. Comp ¶ 3 and Ex 1. Defendant Walgreen's Health Initiatives, Inc. ("WHI") is an Illinois corporation with its principal place of business in Illinois, and defendant Rite-Aid Corporation ("Rite-Aid") is a Delaware corporation with its principal place of business in Pennsylvania. Comp ¶¶ 4-5.

Lakeland's Plan includes a prescription-drug benefit. After the beneficiary makes a co-payment, the Plan pays the remaining charges for eligible drugs that are prescribed by a physician, physician's assistant, or nurse practitioner who is acting within the scope of his/her license. Comp ¶ 9. In 2000, the Plan and WHI entered into a one-year Prescription Services Agreement ("the agreement") which called for WHI to provide prescription benefit management and claim-processing services to the Plan. The agreement provided that it would automatically renew indefinitely for one-year periods unless the parties terminated the agreement according to its terms. Comp ¶¶ 10-11. WHI agreed to provide "general support and consultative services regarding pharmacy benefit design and implementation, formulary management, administrative and claims processing services,

standard reporting packages, marketing, quality management, and utilization functions. Comp ¶ 12 & Ex 2.

In order to implement the agreement, defendant WHI entered into Pharmacy Network Agreements with a number of community retail pharmacies, including Rite-Aid. Under a pharmacy network agreement, a pharmacy agrees to "cooperate with and support" WHI's drug-utilization review program, use its professional judgment to act on review information provided by WHI, and exercise professional judgment in dispensing – or refusing to dispense – covered drugs. Comp ¶¶ 13-15. The pharmacy network agreement requires a participating pharmacy (such as Rite-Aid) to indemnify and hold harmless the Plan sponsor (Lakeland) from any liability which may result or arise out of, *inter alia*, actual or alleged malpractice, negligence or misconduct by the pharmacy, or from the sale or dispensing of a covered drug to a Plan participant. Comp ¶ 16.

Relying on a police report, Lakeland alleges that from August 2005 to August 2007, Brian Hart, the husband of former Lakeland employee Cindy Hart, forged 53 prescriptions for narcotic drugs in his name and his wife's name, and he filled those prescriptions at four pharmacies. Comp ¶¶ 17-18 and 21. The total cost of narcotics dispensed under prescriptions for Brian and Cindy Hart during that period was about $625,000, of which the Plan paid about $620,000. Comp ¶¶ 19-20. Brian Hart was arrested in August 2007 when it was discovered that he had forged a prescription for an opioid pain medication, Fentora. Comp ¶ 18.

### JURISDICTION

The court has uncontested federal-question jurisdiction pursuant to 28 U.S.C. § 1331 due to Lakeland's assertion of an ERISA claim. Based on uncontested allegations in Lakeland's complaint, it appears that the court also has jurisdiction pursuant to 28 U.S.C. § 1332, due to complete diversity

of citizenship of the parties and more than $75,000 at stake exclusive of attorneys' fees and costs and interest.  *See* Comp ¶¶ 1-7.  Pursuant to 28 U.S.C. § 1367, the court has the authority and discretion to exercise supplemental jurisdiction over Lakeland's state-law claims.

## CHOICE OF LAW

The Prescription Services Agreement between plaintiff Lakeland's Plan and defendant Walgreens states that Illinois law should govern.  When interpreting contracts in a diversity action – or state-law claims that are pendent to a federal claim – federal courts generally enforce the parties' contractual choice of law.  *Amerisure Mut. Ins. Co. v. Carey Transp., Inc.*, 578 F. Supp.2d 888, 897 (W.D. Mich. 2008) (Maloney, C.J.) (citing *Savedoff v. Access Group, Inc.*, 524 F.3d 754, 762 (6th Cir. 2008) (citing *Carnival Cruise Lines, Inc. v. Schute*, 499 U.S. 585, 596 (1991) & *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972))).

Here, however, the parties do not *seek* enforcement of their choice-of-law provision for purposes of this motion.  WHI contends that Michigan law governs the tort issues in this case, *see* WHI's MTD at 5 n.4 (citing *Allmand Assocs., Inc. v. Hercules, Inc.*, 960 F. Supp. 1216, 1223 n.3 (E.D. Mich. 1997) and *Imaging Fin. Servs., Inc. v. Lettergraphics Detroit, Inc.*, 178 F.3d 1294, 1999 WL 11573 (6th Cir. 1999) (applying Michigan law to defendant's third-party tort claims where the contracts involved contained provisions selecting Massachusetts and New York law)), and plaintiff Lakeland's brief also proceeds under Michigan law.

Accordingly, the court will apply Michigan law to the determination of whether Lakeland has a cognizable tort cause of action against WHI.  *See, e.g., Savedoff*, 524 F.3d at 762 ("As the parties do not dispute that the student loan contracts at issue are governed by Ohio law, we apply Ohio law to the parties' contractual dispute."); *State Farm Fire & Cas. Co. v. Liberty Ins.*

*Underwriters, Inc.*, 2009 WL 702863, *4 (W.D. Mich. Mar. 16, 2009) (Maloney, C.J.) ("As the parties do not dispute that the interpretation of the policies is governed by Michigan substantive law, the court applies Michigan law to this dispute."); *Ameriquest*, 578 F. Supp.2d at 897 ("As the parties do not dispute that the Amerisure-Carey policy is governed by Michigan substantive law, the court applies Michigan law to this dispute.").

## PROCEDURAL HISTORY

Lakeland asserts one federal statutory claim and four claims under state common law. Invoking 29 U.S.C. § 1104 and § 1132(a)(2), count one claims that WH1 breached its fiduciary duty under ERISA by failing to exercise due care in monitoring the drugs dispensed under the plan. *See* Comp ¶¶ 23-25. Specifically, Lakeland alleges that WHI knew or had reason to know that the Harts were filling an unusual and excessive number of prescriptions, over an extended period of time, for narcotics that are known to have a high potential for abuse. *See* Comp ¶¶ 26-30.

Count two alleges that WHI breached its agreement with the Plan by failing to implement quality-management and utilization-management measures that would have led to the investigation of the many forged narcotic prescriptions filled by the Harts, *see* Comp ¶¶ 33-34, and count three alleges that WHI was negligent for the same reason, including by failing to audit the pharmacies that dispensed the drugs to the Harts, Comp ¶¶ 36-44.

Counts four and five allege that Rite-Aid was negligent, and breached its duty to the Plan as third-party beneficiary of the WHI-Rite Aid pharmacy network agreement. *See* Comp ¶¶ 46-62. Lakeland seeks more than $600,000 in damages as reimbursement for its payment towards the Harts' fraudulent prescriptions, plus attorneys fees and costs, and interest, *see* Comp ¶¶ 31, 35, 45, 54 and

62, and it demands a jury trial, Comp at 12.

In April 2008, Rite-Aid timely filed an answer and affirmative defenses with regard to all counts, and WHI filed only a motion to dismiss count three, Lakeland's negligence claim.

## LEGAL STANDARD:

## MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

This court assesses a Rule 12(b)(6) motion to dismiss for failure to state a claim on which relief can be granted under the same standard as a Rule 12(c) motion for judgment on the pleadings. *Griffin v. Reznick*, 2008 WL 4741738, *2 (W.D. Mich. Oct. 28, 2008) (Maloney, C.J.) (citing *Zeigler v. Mieskiewicz*, 2008 WL 650335, *2 (S.D. Ohio Mar. 5, 2008) (citing *Lindsay v. Yates*, 498 F.3d 434, 438 (6th Cir. 2007))). Such motions turn on legal issues, not an assessment of the evidence. *Griffin*, 2008 WL 4741738 at *2 (citing *Technology Recycling Corp. v. City of Taylor*, 186 F. App'x 624, 640 n.5 (6th Cir. 2006) (Griffin, J.) ("*Tech Rec*") and *Thomas v. Arn*, 474 U.S. 140, 150 n.8 (1985) ("[M]otions for judgment on the pleadings and dismissal for failure to state a claim on which relief can be granted . . . consist exclusively of issues of law.")). A Rule 12(c) motion is simply one permissible avenue for contending that the complaint should be dismissed because it fails to state a claim on which relief can be granted. *See Griffin*, 2008 WL 4741738 at *2 (citing *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 507 (2006) ("a defense of failure to state a claim upon which can be granted . . . may be made in any pleading . . . or by motion for judgment on the pleadings, or at the trial . . . .") (quoting FED. R. CIV. P. 12(h)(6))).

"Such motions 'presume as a legal matter the lack of any need for an evidentiary hearing . . . .'" *Griffin*, 2008 WL 4741738 at *3 (citing *US v. Raddatz*, 447 U.S. 667, 693-94 (1980)). The

court must accept all of the complaint's factual allegations as true and construe the complaint in the light most favorable to the plaintiff. *Tech Rec*, 186 F. App'x at 640 n.5 (citing *Penny/Ohlmann/Nieman, Inc. v. Miami Valley Pension Corp.*, 399 F.3d 692, 697 (6th Cir. 2005) ("*PONI*")); *see also Bohanan v. Bridgestone/Firestone No. Am. Tire, LLC*, 260 F. App'x 905, 906 (6th Cir. 2008) (citing *Ziegler v. IBP Hog Market, Inc.*, 249 F.3d 509, 511-12 (6th Cir. 2001)); *Heggie v. Kuzma*, 2009 WL 594908, *9 (W.D. Mich. Mar. 6, 2009) (Maloney, C.J.) ("the court must accept as true all Plaintiff's allegations and construe the complaint liberally in his favor") (citing *Herron v. Harrison*, 203 F.3d 410, 414 (6th Cir. 2000)).  But the court need not draw unwarranted factual inferences or accept the plaintiff's *legal* conclusions. *Bohanan*, 260 F. App'x at 906 (citing *Mixon v. Ohio*, 193 F.3d 389, 400 (6th Cir. 1999)).

And each claim's factual allegations must *plausibly* suggest a viable claim; the claim must be plausible and not merely conceivable. *Griffin*, 2008 WL 4741738 at *3 (citing *NicSand, Inc. v. 3M Co.*, 507 F.3d 442, 455 (6th Cir. 2007) (en banc) (Sutton, J., joined by Griffin et al.) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544,  –, 127 S.Ct. 1955, 1974 (2007))).  "The 'factual allegations must be enough to raise a right to relief above the speculative level'", not merely create a "'*suspicion* of a legally cognizable cause of action . . . .'" *Bishop v. Lucent Technologies, Inc.*, 520 F.3d 516, 519 (6th Cir. 2008) (quoting *Twombley*, 550 U.S. at –, 127 S.Ct. at 1974) (internal alterations omitted)).[2] There must be either direct of inferential allegations regarding all the material

---

[2]

Until 2007, our Circuit followed the standard set forth in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), which directed courts to grant a 12(b)(6) motion "when it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint." *Taylor v. Sampson*, 2008 WL 2923435, *2 n.3 (W.D. Mich. July 25, 2008) (Maloney, J.). Lakeland's brief erroneously cites this formulation as current law. *See* P's Opp at 3.

In *Twombley* (2007), the Supreme Court "retired the 'no set of facts' formulation of the Rule

elements of each claim. *LULAC v. Bredesen*, 500 F.2d 523, 527 (6th Cir. 2007) (McKeague, J.)

(citing *Twombley*, 550 U.S. at –, 127 S.Ct. at 1969).

Our Circuit cautions that district courts should not overstate the hurdle that *Twombley* establishes for plaintiffs to survive a Rule 12(b)(6) or Rule 12(c) motion:

> In *Erickson v. Pardus*, 550 U.S. [89], 127 S.Ct. 2197 . . . (2007) [(p.c.)], decided two weeks after *Twombley*, however, the Supreme Court affirmed that "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.' Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Id.* at 2200 (quoting *Twombley*, 127 S.Ct. at 1964). The opinion in *Erickson* reiterated that "when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Id.* (citing *Twombley*, 127 S.Ct. at 1965). We read the *Twombley* and *Erickson* decisions in conjunction with one another when reviewing a district court's decision to grant a motion to dismiss for failure to state a claim or a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12.

*Tucker v. Middleburg-Legacy Place*, 539 F.3d 545, 550 (6th Cir. 2008) (Griffin, J.) (quoting

*Sensations, Inc. v. City of Grand Rapids*, 526 F.3d 291, 295-96 (6th Cir. 2008) (footnote omitted))

(other internal quotation marks and alterations omitted). Nonetheless, "[w]hile a complaint need

not contain detailed allegations, [it] must include more than mere labels and conclusions." *Petros*

*v. Sampson*, 2009 WL 2761425, *2 (W.D. Mich. Feb. 4, 2009) (Edgar, J.) (citing, *inter alia*,

*Twombley*, 550 U.S. at –, 127 S.Ct. at 1965).

When considering whether to grant a Rule 12(c) or 12(b)(6) motion, the court primarily

considers the complaint's allegations, but may also take into account items appearing in the record

---

12(b)(6) standard and dismissed an antitrust-conspiracy complaint because it did not contain facts sufficient to 'state a claim to relief that is plausible on its face.'" *Griffin*, 2008 WL 4741738 at *3 n.1 (quoting *Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 337 n.4 (6th Cir. 2007) (quoting *Twombley*, 550 U.S. at –, 127 S.Ct. at 1974)). *See also Casden v. Burns*, – F. App'x –, –, 2009 WL 103620, *6 n.5 (6th Cir. Jan. 16, 2009) (C.J. Boggs, <u>Clay</u>, D.J. Bertlesman).

and attached exhibits. *Poly-Flex Const., Inc. v. NTH, Ltd.*, 582 F. Supp. 892, 901 (W.D. Mich. 2008) (Maloney, C.J.) (citing, *inter alia*, *Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. 2001)).

## A FEDERAL COURT'S APPLICATION OF STATE LAW

"'In applying state law, we anticipate how the relevant state's highest court would rule in the case and are bound by controlling decisions of that court.'" *Appalachian Railcar Servs. v. Boatright Enters., Inc.*, – F. Supp.2d –, –, 2008 WL 828112, *14 (W.D. Mich. 2008) (Paul L. Maloney, J.) ("*ARS*") (quoting *NUFIC of Pittsburgh v. Alticor, Inc.*, 472 F.3d 436, 438 (6th Cir. 2007) (Richard Allen Griffin, J.) (citation omitted)). If the state supreme court has not conclusively decided the issue, a federal court presumptively looks to the decisions of the state's appellate courts: "In anticipating how the state supreme court would rule, 'we look to the decisions of the state's intermediate courts unless we are convinced that the state supreme court would decide the issue differently.'" *ARS*, – F. Supp.2d at –, 2008 WL 828112 at *14 (citing *US v. Lancaster*, 501 F.3d 673, 679 n.3 (6th Cir. 2007) (Griffin, J.) (citation omitted)); *see also West v. AT&T Co.*, 311 U.S. 223, 236-37 (1940) ("A state is not without law save as its highest court has declared it. There are many rules of decision commonly accepted and acted upon by the bar and inferior courts which are nevertheless laws of the state although the highest court of the state has never passed upon them. In those circumstances the federal court is not free to reject the state rule merely because it has not received the sanction of the highest state court . . . .").

In determining what is the controlling law of the State, a federal court also "*may* give weight" to the decisions of the State's trial courts, *Bradley v. GMC*, 512 F.2d 602, 605 (6th Cir. 1975) (citing *Royal Indem. Co. v. Clingan*, 364 F.2d 154 (6th Cir. 1966)), especially when the trial

court's decision is consistent with state appellate decisions, *Bradley*, 512 F.2d at 605.  The federal

court is not *obligated*, however, to follow state trial-court decisions.  *Am. Int'l Ins. Co. of P.R. v.

Lampe GmbH*, – F. App'x –, –, 2009 WL 59145, *1 (3d Cir. 2009) (citing *Houbigant, Inc. v. Fed.

Ins. Co.*, 374 F.3d 192, 199 (3d Cir. 2004)).

## PRECEDENTIAL VALUE OF MICHIGAN DECISIONS

A federal court must accord the same precedential value to a state-court decision as it would

be accorded by that state's courts.  *See ARS*, – F. Supp.2d at –, 2008 WL 828112 at *14 (citing

*Mutuelle Generale Francaise Vie v. Life Ass. Co. of Pa.*, 688 F. Supp. 386, 397 n.15 (N.D. Ill. 1988)

("[O]ne Supreme Court decision (*Fidelity Union Trust Co. v. Field*, 311 U.S. 169 . . . (1940)) . . .

required a federal court to ascribe the same precedential force to a New Jersey trial court decision

that such a decision would receive in that state's court system under the peculiarities of New Jersey

law.")).  If a state court would not be bound by a particular state-court decision, then neither is this

court.  *ARS*, – F. Supp.2d at –, 2008 WL 828112 at *14 (citing *King v. Order of United Commercial

Travelers of America*, 333 U.S. 153, 161 (1948) ("a federal court adjudicating a matter of state law

in a diversity suit is, in effect, only another court of the State; it would be incongruous indeed to

hold the federal court bound by a decision which would not be binding on any state court.") (citation

omitted)).

Michigan Court Rule 7.215(C)(2) states that "[a] published decision of the Court of Appeals

has precedential value under the rule of stare decisis."  This subsection makes no distinction based

on when the decision was issued..  *ARS*, – F. Supp.2d at –, 2008 WL 828112 at *14.

However, Michigan Court Rule 7.215(J)(1) provides that "[a] panel of the Court of Appeals must follow the rule of law established by a prior published decision of the Court of Appeals *issued on or after November 1, 1990*, that has not been reversed or modified by the Supreme Court or by a Special Panel of the Court of Appeals as provided in this rule." .  *ARS*, – F. Supp.2d at –, 2008 WL 828112 at *14 (emphasis added).

Synthesizing Michigan Court Rules 7.215(C)(2) and 7.215(J)(1), the Michigan Court of Appeals accords precedential value to *all* of its prior published decisions, regardless of when they were issued.  *ARS*, – F. Supp.2d at –, 2008 WL 828112 at *14.  When a post-November 1, 1990 published Court of Appeals decision conflicts with a *pre*-November 1, 1990 published Court of Appeals decision, however, the *post*-November 1, 1990 decision prevails.  *Id.*

When there is a conflict between two published decisions of the Court of Appeals that were *both* issued *after* November 1, 1990, Michigan courts must follow the first opinion that addressed the matter at issue.  *ARS*, – F. Supp.2d at –, 2008 WL 828112 at *15 (citing *Novak v. Nationwide Mut. Ins. Co.*, 599 N.W. 2d 546, 554 (Mich. App. 1999) (citation omitted)).

By contrast, Michigan Court of Appeals panels are not bound by *un*published decisions of that same court, regardless of when they were issued.  *ARS*, – F. Supp.2d at –, 2008 WL 828112 at *15 (citing *Iqbal v. Bristol West Ins. Group*, 748 N.W.2d 574, 582 n.5 (Mich. App. 2008) (citing MICH. CT. R. 7.215(J)(1))).  Nonetheless, this court may consider and follow unpublished state-court decisions, so long as they do not contradict published decisions of the Michigan Supreme Court or Michigan Court of Appeals.  *See Republic-Franklin Ins. Co. v. Bosse*, No. 95-3401, 89 F.3d 835, 1996 WL 301722, *5 n.4 (6th Cir. June 4, 1996) (although unpublished decisions are not generally controlling under Ohio law, "[w]e cite them, nevertheless, due to our sensitivity to state law in

-11-

deciding diversity cases.") (citing *Royal Indem. Co.*, 364 F.2d at 154 ("Although we are not bound in a diversity case by an unreported decision of a State court of original jurisdiction, we may give weight to this [unreported] decision of the chancery [court] in determining what is the controlling [state] law.")).

Finally, a federal court's interpretation of state law is not binding.  *ARS*, – F. Supp.2d at –, 2008 WL 828112 at *14 (citing *Leavitt v. Jane L.*, 518 U.S. 137, 146 (1996) (Stevens, J., dissenting o.g., joined by Souter, Ginsburg, & Breyer, JJ.) ("[T]he decision of a federal court (even this Court) on a question of state law is not binding on state tribunals . . . .")); *accord McGrath v. Toys 'R Us, Inc.*, 356 F.3d 246, 250 (2d Cir. 2004) (citing *Sargent v. Columbia Forest Prods., Inc.*, 75 F.3d 86, 90 (2d Cir. 1996)); 20 AM. JUR.2D COURTS § 225 (1965).  As our Circuit recently emphasized,

> No federal court has the final say on what [state] law means.  Even the decision of the highest federal court, the United States Supreme Court, about the meaning of [a state] law has no more binding authority on the [state] Supreme Court than the decision of [another State's] Supreme Court or for that matter any other court.

*Ohio ex rel. Skaggs v. Brunner*, 549 F.3d 468, 472 (6th Cir. 2008).

Accordingly, this court will seriously consider our Circuit's interpretation of state law, or another district court's interpretation of state law, but is not bound by it.  *See ARS*, – F. Supp.2d at –, 2008 WL 828112 at *15; *see also Pack v. Damon Corp.*, 2006 WL 1156489, *1 (E.D. Mich. May 1, 2006) ("Michigan courts, in turn, are not bound by the Sixth Circuit's interpretation of Michigan law.").  *See, e.g., Michigan Protection & Advocacy Servs. v. Michigan DOC*, 581 F. Supp.2d 847, 856 (W.D. Mich. 2008) (Maloney, C.J.) ("*MPAS*") (declining to follow U.S. District Court for the Eastern District of Michigan's determination that MDOC is a political subdivision of the State of Michigan, a matter of state law).

**DISCUSSION:**

**Defendant WHI's Motion to Dismiss Count 3 for Failure to State a Claim**

In its entirety, Lakeland's second count, a breach-of-contract claim, reads as follows:

33.    The Agreement between the Plan and WHI requires WHI to provide not only "management services," but also "quality management" and "utilization management" services. (Exhibit 2.) Such services are generally understood in the industry as being programs to identify and correct drug use problems.

34.    WHI breached its contract with the Plan by failing to implement quality management and utilization management services in order to identify and investigate the excessive number of and [sic] fraudulent narcotic prescriptions filled by Brian Hart and/or Cindy Hart during the period August 2005 to August 2007.

Comp ¶¶ 33-34. Lakeland's third count, a negligence claim, reads as follows:

37.    WHI had a duty of care to Plaintiffs to monitor prescription drug use by Plan members to identify and prevent improper or fraudulent dispensing of narcotic drugs.

38.    WHI had a further duty to inform Plaintiffs of improper and/or fraudulent dispensing of narcotics drugs to Plan members.

39.    WHI knew or should have known that the number of prescriptions for narcotic drugs filled by Plan members during the period August 2005 to August 2007 was abnormally high.

40.    WHI knew or had reason to know of the excessive number and nature of narcotic prescriptions filled by Brian Hart and/or Cindy Hart during the period August 2005 to August 2007.

41.    WHI knew or had reason to know of the fraudulent narcotic prescriptions filled by Brian Hart and/or Cindy Hart during the period August 2005 to August 2007.

42.    WHI had identified Fentora, Fentanyl, and Actiq as having a high potential for misuse or abuse.

43.    WHI was negligent and breached its duty of care to Plaintiffs by failing to identify and prevent narcotic drugs from being dispensed to Brian Hart and/or Cindy Hart on the basis of forged prescriptions.

44.     WHI was also negligent in failing to properly audit the pharmacies dispensing narcotic drugs to Brian Hart and/or Cindy Hart.

Comp ¶¶ 37-44.  Lakeland seeks "in excess of $600,000" in compensatory damages on count two - breach of contract, and the same on count three - negligence.[3]

WHI contends that the negligence claim must be dismissed because Lakeland has not alleged any tort duties that are distinct from the contractual duties that WHI owed Lakeland.  Because of the less-than-bright line between tort and contract claims in some situations, an extensive review of the Michigan case law over the years is helpful to an informed ruling on this argument.

**Until recently, the seminal decision on these issues in the modern era was *Hart v. Ludwig*, 79 N.W.2d 895 (Mich. 1956).**  Hart and other orchard owners sued Ludwig for "refusing and neglecting" to abide by an oral agreement to care for their trees.  Specifically, he worked the orchard during the spring of 1952, but sometime during the 1953 season he stopped removing shutes, pruning, fertilizing, and protecting the trees against animals.  *Hart*, 79 N.W.2d at 896.  The orchard owners sued Ludwig for negligence, and the Michigan Supreme Court squarely confronted the question, "we have, clearly, an action in tort, arising out of breach of contract.  Can it be

---

[3]

WHI's opening brief alleges the following:

Although not before the Court due to the nature of this Motion, the facts will ultimately show that WHI notified LMRC in both 2006 and 2007 that it had abnormally high narcotics use, and recommended that LMRC purchase and implement WHI's Med Monitor TM Program.  The Med Monitor TM Program tracks individual Plan member's [sic] utilization patterns and alerts physicians and pharmacies to potential member-specific utilization issues.  Despite WHI's recommendation that LMRC implement this program, LMRC exercised its discretion and declined to do so.

WHI's Br. in Support of Motion to Dismiss Count 3 under Ruler 12(b)(6) ("MTD") at 3 n.3.  The court agrees that these factual allegations are not properly before the court at this stage of the case, and counsel should not have included them.

-14-

maintained?" *Id.*

Reviewing the British and early American common law, the Michigan Supreme Court noted that courts had gradually drawn this distinction: when someone undertakes to perform work under an agreement, he can be held liable in tort for "misfeasance", i.e., if he performs poorly, carelessly, or incompletely, but no tort action will lie for "nonfeasance,", i.e., if he simply does nothing to render the promised performance. *Hart*, 79 N.W.2d at 896-97. Acknowledging that the line between contract and tort actions was sometimes unclear, the court enunciated the following principle:

> When the cause of action arises merely from a breach of promise, the action is in contract. The action of tort has for its foundation the negligence of the defendant, and this means more than a mere breach of a promise. Otherwise, the failure to meet a [promissory] note or any other promise to pay money, would sustain a suit in tort for negligence, and thus the promisor be made liable for all the consequential damages arising from such failure. *As a general rule, there must be some active negligence or misfeasance to support tort. There must be some breach of duty distinct from breach of contract.*

*Hart*, 79 N.W.2d at 897. Applying this rule to the facts at hand, the Court held that the orchard owners could *not* bring a tort claim against Ludwig for discontinuing his promised efforts. Quoting the first edition of Prosser's Handbook on the Law of Torts, the Court declared that

> "if a relation exists which would give rise to a legal duty without enforcing the contract promise itself, the tort action will lie, otherwise not."
>
> Before us, however, we have not such a case. We have simply the violation of a promise to perform the agreement. The only duty, other than that voluntarily assumed in the contract . . . , was his duty to perform the promise in a careful and skillful manner without risk of harm to others, the violation of which is not alleged. What we are left with is defendant's failure to complete his contracted-for performance. This is not a duty imposed by the law upon all, the violation of which gives rise to a tort action, but a duty arising out of the intentions of the parties themselves and owed only to those specific individuals to whom the promise runs. A tort action will not lie.

-15-

*Id.* at 898-99.

About thirty years later, the Michigan Supreme Court reaffirmed *Hart* in a different context.  In *Owens v. Auto-Owners Ins. Co.*, 374 N.W.2d 905 (Mich. 1985), a girl was injured in an automobile accident, and her parents sued their no-fault insurer.  *Owens*, 374 N.W.2d at 906.  The insurer paid her ambulance and hospital expenses, but refused to pay replacement benefits, which the parents contended was not only a breach of the insurance contract but also a tort – the intentional infliction of emotional distress.  *Id*. at 906.

The insurer tried to rely on *Kewin v. Mass. Mut. Life Ins. Co.*, 295 N.W.2d 50 (Mich. 1980), where the Court held that (1) a disability insurance policy did not involve matters of mental concern and solicitude that would justify an award of mental-distress damages for its breach, *see Owens*, 374 N.W.2d at 907 (quoting *Kewin*, 295 N.W.2d 50) (footnote 5 omitted), and (2) exemplary damages were not recoverable for breach of a commercial contract "'absent allegation and proof of tortious conduct existing independent of the breach [of the contract].'"  *Owens*, 374 N.W.2d at 907-08 (quoting *Kewin*, 295 N.W.2d at 50, and citing *Valentine v. Gen. Am. Credit, Inc.*, 362 N.W.2d 628, 633 (Mich. 1984) (employee could not recover mental-distress damages for breach of employment contract, and he could not recover exemplary damages unless he pled purposeful tortious conduct)).

The *Owens* Court noted that *Kewin* had left open the question whether a separate tort claim for intentional infliction of emotional distress may be brought on the basis of an insurer's dilatory handling of a claim.  *Owens*, 374 N.W.2d at 908 (footnote 6 omitted).  In considering that question, the Supreme Court harkened back to *Hart v. Ludwig* (Mich. 1956):

> The action of tort has for its foundation the negligence of the defendant, and this means more than a mere breach of a promise * * *
>
> As a general rule, there must be some active negligence or malfeasance to support

tort.  *There must be some breach of duty distinct from breach of contract.* * * *

*Owens*, 374 N.W.2d at 909 (quoting *Hart*, 79 N.W.2d at 895 (quoting *Tuttle Gilbert Mfg. Co.*, 13

N.E.465 (Mass. 1887)) (emphasis added).

> **The Michigan Supreme Court revisited the contract/tort issue six years later in *Ferrett***
>
> ***v. GMC*, 475 N.W.2d 243 (Mich. 1991**), where General Motors fired an employee for excessive
>
> absenteeism, and he sued them for breach of contract and the putative tort of negligent performance
>
> evaluation.  *Ferrett*, 475 N.W.2d at 244-45.  The Michigan Supreme Court held that the allegedly
>
> negligent evaluation was not actionable in tort:

> Ferrett complains essentially that GM failed to perform an asserted obligation, arising out of the procedures set forth in the employee handbook, to undertake a third Performance Improvement Plan when he failed to maintain an acceptable attendance record following the completion of the second ninety-day Performance Improvement Plan.  In *Hart* [*v. Ludwig*, 79 N.W.2d 895 (Mich. 1956)], this court held that an action in tort may not be maintained for failure to perform a contract.

>> We have simply the violation of a promise to perform the agreement. The only duty, other than that voluntarily assumed in the contract . . . , was his duty to perform the promise in a careful and skillful manner without risk of harm to others, the violation of which is not alleged.  What we are left with is defendant's failure to complete his contracted-for performance.  This is not a duty imposed by the law upon all, the violation of which gives rise to a tort action, but a duty arising out of the intentions of the parties themselves and owed only to those specific individuals to whom the promise runs.  A tort action will not lie.

>> * * *

> In the instant case, as in *Hart*, what we are left with is this defendant's [alleged] failure to complete his contracted-for performance.  Here, as there, the contracted-for performance is not a duty imposed by the law upon all, but, rather, a duty arising out of the intentions of the parties themselves only to the those [sic] specific individuals to whom the promise runs.

> * * *

> Absent an employer's agreement to provide job security or to discharge only for cause, the employment relationship is at the will of both parties.  Ferrett was essentially an at-will employee – his employment was month to month – and therefore he did not have a contractual right to be evaluated or correctly evaluated

-17-

before the employer exercised its right to discharge him at will.

> Just as the law did not impose on the person who agreed to work the orchard in *Hart v. Ludwig* a duty to complete the contracted-for performance . . . neither does it impose on GM a common-law obligation to evaluate or correctly evaluate Ferrett before exercising its right to discharge him at will.  There is, thus, no right arising at common law as a matter of public policy, separate and distinct from any contractual right, to be evaluated or correctly evaluated before being discharged from employment.

*Ferrett*, 475 N.W.2d at 247, 248 (internal citations, quotation marks, and footnotes omitted).  The

Michigan Supreme Court noted approvingly that

> [c]ases recognizing a right to maintain an action in tort arising out of a breach of contract by the defendant, generally involve a separate and distinct duty imposed by law for the benefit of plaintiff that provides a right to maintain an action without regard to whether there was a contractual relationship between the plaintiff and the defendant.

> In *Clark v. Dalman,* [150 N.W.2d 755 (Mich. 1967)], the duty "imposed by law" was "the general duty of a contractor to act so as not to unreasonably endanger the well-being of employees of either subcontractors or inspectors, or anyone else lawfully on the site . . . ."

> *We conclude that because there is no separate and distinct duty imposed by law to evaluate or correctly evaluate employees*, Ferrett cannot maintain an action in tort against GM . . . .

*Ferrett*, 475 N.W.2d at 248 (emphasis added).

**Five years after *Ferrett* (1991), the Supreme Court seemingly continued adherence to the *Hart - Ferrett* approach in *Corl v. Huron Castings, Inc.*, 544 N.W.2d 278 (Mich. 1996).**

Writing for a four-member majority including Justices Brickley, Mallett, and Weaver, Justice Riley

stated:

> Similarly [to *Ferrett* (Mich. 1991)], in the present case, we are confronted with an employer who impliedly contracted to terminate his employee [only] for just cause. The jury held that defendant failed to fulfill his duty.  This duty, however, was not imposed upon "all", but only upon [defendant], who impliedly contracted with [plaintiff].  Therefore, we conclude that defendant's liability does not arise in tort.

-18-

*Id.* at 281 (footnotes 11 and 12 omitted).

The year after *Corl*, the Michigan Supreme Court issued *Rinaldo's Const. Corp. v. Mich. Bell Tel. Co.*, 559 N.W.2d 647 (Mich. 1997). Rinaldo's experienced serious problems with its telephone service after it moved to a new address, and it sued Michigan Bell on theories of negligence, *res ipsa loquitur*, and willful misrepresentation. *Rinaldo's*, 559 N.W.2d at 651. Under Michigan law as it already existed, one could sue a telecommunications carrier in a court of general jurisdiction if the cause of action sounded in tort or alleged that the carrier had violated a tariff or regulation. *Id.* If the claim arose solely out of the contractual relationship between the telephone company and the customer, however, the doctrine of primary jurisdiction would oblige the customer to proceed before the Michigan Public Service Commission. *Id.* The trial court and Court of Appeals both reasoned that the phone company's "only duty to Rinaldo's arose 'as a result of a contractual agreement between defendant and a specific individual or entity.'" *Rinaldo's*, 559 N.W.2d at 651 (citation to slip op. omitted). Therefore, the lower courts concluded, Rinaldo's had no cognizable cause of action in tort and was required to assert its claim before the MPSC. *Id.*

The Supreme Court affirmed, agreeing that Rinaldo's could not state a tort claim. Rinaldo's had contended that Michigan Bell owed it "a duty to conduct its business in a reasonable manner; to provide the Plaintiff with adequate telephone service . . . ; to employ competent trained personnel; to maintain, inspect, and use equipment in an appropriate manner so as not to injure the Plaintiff in business; and to be honest and forthright in its dealings with Plaintiff." *Rinaldo's*, 559 N.W.2d at 656. The Supreme Court agreed that Michigan Bell owed Rinaldo's each of the aforementioned duties, but it found that those duties "arose solely out of the contractual obligation between the parties and not from any independent legal obligations supporting a cause of action in tort." *Id.*

Writing for a unanimous 6-0 Court (with Justice Weaver not participating), Justice Boyle rejected

the notion that a claim could sound in tort merely because the complaint alleged tortious conduct.

*Rinaldo's*, 559 N.W.2d at 657.  The Court approved the Court of Appeals's reasoning that

> [i]n a contractual setting, a tort action must rest on a breach of duty distinct from contract . . . .  Mere failure to perform an obligation under a contract cannot give rise to a negligence cause of action in tort . . . .
>
> The [telephone company] does not owe a general duty to provide and maintain telephone service to the public at large.  To the contrary, defendant's "duty" to do so only arises as a result of a contractual agreement between defendant and a specific individual or entity . . . .

*Rinaldo's*, 559 N.W.2d at 657.  But the Supreme Court added its own gloss, which might make it

more difficult, in some cases, to survive a dispositive motion which challenges the existence of a

cognizable tort cause of action.  The question whether a claim sounds in contract or in tort "is not

to be resolved by mere allegation, but rather by analysis of whether the facts pled give rise to a legal

duty in tort independent of breach of contract." *Id.* at 657.

Otherwise, the Court again followed *Hart*, approving its statement that "'[a]s a general rule,

there must be some negligence or malfeasance to support a tort.  There must be some breach of duty

distinct from breach of contract.'"  *Rinaldo*, 559 N.W.2d at 657 (quoting *Hart*, 79 N.W.2d 895).

Because it can be so difficult to distinguish between misfeasance and nonfeasance, the

*Rinaldo's* Court emphasized *Hart*'s explanation that the fundamental principle separating the causes

of action is the concept of duty.  The Court observed the common elements running through the

cases where misfeasance on a contract was found to support a tort claim:  a relationship between the

parties or other circumstance that would give rise to a legal duty of care even if there were no

contract, and a risk to life or tangible property from the defendant's conduct.  The Court wrote:

> [I]n each a situation of peril [was] created, with respect to which a tort action would

> lie without having recourse to the contract itself.  Machinery [was] set in motion and
> *life or property [was] endangered . . . .*  In such cases . . . we have a "breach of duty
> distinct from . . . contract."  Or, as Prosser puts it . . . "if a relation exists which
> would give rise to a legal duty without enforcing the contract promise itself, the tort
> action will lie, otherwise not."

*Rinaldo's*, 559 N.W.2d at 658 (quoting *Hart*, 79 N.W.2d at 895) (emphasis and bracketed alterations

in original).  ***"In other words, the threshold inquiry is whether the plaintiff alleges violation of a***

***legal duty separate and distinct from the contractual obligation."***  *Rinaldo's*, 559 N.W.2d at 658.

Comparing Rinaldo's dispute with Michigan Bell case to the situations it confronted in *Hart* and

*Valentine*, the Supreme Court concluded,

> In this case, as in *Hart*, the defendant agreed to provide the plaintiff with services
> under a contract.  Like the defendant in *Hart*, Michigan Bell allegedly failed to fully
> perform according to the terms of its promise.  While plaintiff's allegations arguably
> make out a claim for "negligent performance" of the contract, there is no allegation
> that this conduct by the defendant constitutes tortious activity in that it caused
> physical harm to persons or tangible property; and plaintiff does not allege violation
> of an independent legal duty distinct from the duties arising out of the contractual
> relationship.
>
>
> Like the plaintiff in *Valentine*, "regardless of the variety of names [plaintiff gives
> the] claim, [plaintiff is] basically complaining of inadequate service and equipment
> . . . ."  *Id.* at 22, 199 N.W.2d 182.  Thus, under the principles outlined above, there
> is no cognizable cause of action in tort.

*Rinaldo's*, 559 N.W.2d at 658 (paragraph break added).

The Michigan Supreme Court's most recent pronouncement on the tort/contract issue

was *Fultz v. Union Commerce Assocs.*, 683 N.W.2d 587 (Mich. 2004) (Maura Corrigan, C.J.,

for a 5-member majority).[4]  *Fultz* criticizes reliance on the misfeasance/nonfeasance distinction.

---

[4]One member of the *Fultz* majority, Justice Clifford Taylor, is no longer on the court.
But the other four Justices from the *Fultz* majority remain:  Corrigan, Weaver, Young, and
Markman.

At the least, *Fultz* purports to relegate analysis of the misfeasance/nonfeasance distinction to a lesser role when determining whether a tort cause of action is cognizable under the particular facts. [5]

Fultz, a pedestrian who was injured when she slipped and fell on ice in a parking lot, sued in negligence against the parking-lot owner, Comm-Co, and the contractor which the owner had contracted to provide snow-removal and salting services for that lot, CML. *Fultz*, 683 N.W.2d at 589. At the time of Fultz's fall, CML had not plowed the lot in about 14 hours and had not salted the lot. *Id.* The jury found no breach of the oral contract between the owner Comm-Co and contractor CML, but it awarded compensatory damages to Fultz after finding that CML had been negligent by failing to perform under the contract and that said negligence was the proximate cause of her injuries. *Id.* The Michigan Court of Appeals affirmed, holding that CML owed a common-law duty to provide the contracted snow-removal and salting services in a reasonable manner, a duty which it breached by failing to perform its contractual obligations. *Id.*

The Michigan Supreme Court reversed, holding that, as a matter of law, CML owed no contractual or common-law duty to plaintiff to plow or salt the parking lot. *Fultz*, 683 N.W.2d at 590. The *Fultz* majority reasoned as follows:

> If one voluntarily undertakes to perform an act, having no prior obligation to do so, a duty may arise to perform the act in a non[-]negligent manner. [citations omitted]

> We described this common-law duty in *Clark v. Dalman*, . . . 150 N.W.23d 755 ([Mich.] 1967):

>> Actionable negligence presupposes the existence of a legal relationship between parties by which the injured party is owed a duty by the other, and such duty must be imposed by law . . . .

---

[5]

WHI"s opening brief in support of its motion to dismiss count three does not even mention *Fultz*. After Lakeland relies on *Fultz* in its opposition, WHI addresses *Fultz* in its reply.

Such duty of care may be a specific duty owing to the plaintiff by the defendant, or it may be a general one owed by the defendant to the public, of which the plaintiff is a part.  Moreover, while this duty of care, as an essential element of actionable negligence, arises by operation of law, it may and does arise out of a contractual relationship, the theory being that accompanying every contract is a common-law duty to perform with ordinary care the thing agreed to be done, and that a negligent performance constitutes a tort as well as a breach of contract. [*Clark*, 150 N.W.23d 755]

In defining the contours of this common-law duty, our courts have drawn a distinction between misfeasance (action) and nonfeasance (inaction) for tort claims based on a defendant's contractual obligations.  We have held that a tort action will not lie when based solely on the nonperformance of a contractual duty.  *See Hart v. Ludwig* . . . .

* * *

In *Hart* . . . 79 N.W.2d 895, this Court opined that the misfeasance/nonfeasance distinction is often largely semantic and somewhat artificial:

> The division thus made, between misfeasance, which may support an action either in tort or on the contact, and the nonfeasance of a contractual obligation, giving rise only to an action on the contract, is admittedly difficult to make in borderland [sic] cases.  There are, it is recognized, cases in which an incident of nonfeasance occurs in the course of an undertaking assumed.  Thus a surgeon fails to sterilize his instruments, an engineer fails to shut off steam, a builder fails to fill in a ditch in a public way.  These are all, it is true, failures to act, each disastrous detail, in itself, a "mere" nonfeasance.

> But the significant similarity relates not to the slippery distinction between action and nonaction but to the fundamental concept of "duty"; in each a situation of peril has been created, with respect to which a tort action would lie without having recourse to the contract itself.

*We believe the "slippery distinction" between misfeasance and nonfeasance of a duty undertaken obscures the proper initial inquiry:  Whether a particular defendant owes any duty at all to a particular plaintiff.*

[We] have defined a tort action stemming from misfeasance of a contractual obligation as the "violation of a legal duty separate and distinct from the contractual obligation."  *Rinaldo's* . . . 559 N.W.2d 647 (1997); *see, also, e.g., Ferrett v. Gen. Motors Corp.* . . . 475 N.W.2d 243 (1991) . . . .

**We believe that the "separate and distinct" definition of misfeasance offers**

-23-

**better guidance in determining whether a negligence action based on a contract** *and brought by a third party to that contract* **may lie because it focuses on the threshold question of duty in a negligence claim.**  As there can be no breach of a nonexistent duty, the former misfeasance/nonfeasance inquiry in a negligence case is defective because it improperly focuses on whether a duty was breached instead of whether a duty exists at all.

*Fultz*, 683 N.W.2d at 591-92 (emphasis added, internal citations omitted).

*Fultz* **mandates this court's initial inquiry should be whether WHI owed any duty at all to plaintiff Lakeland to do the things that WHI allegedly failed to do**, *not* focusing on whether Lakeland has alleged misfeasance or nonfeasance as earlier precedents did.  *See Fultz*, 683 N.W.2d at 592 ("We believe the "slippery distinction" between misfeasance and nonfeasance of a duty undertaken obscures the proper initial inquiry:  Whether a particular defendant owes any duty at all to a particular plaintiff.").

Lakeland's negligence count claims that WHI breached two putative duties: its "duty of care to Plaintiffs to monitor prescription drug use by Plan members to identify and prevent improper or fraudulent dispensing of narcotic drugs", Comp ¶ 37; its "duty to inform Plaintiffs of improper and/or fraudulent dispensing of narcotics drugs to Plan members", Comp ¶ 38.  Lakeland's count 3 alleges that WHI breached one or both of these duties by "failing to properly audit the pharmacies dispensing narcotic drugs to Brian Hart and/or Cindy Hart", Comp ¶ 44.  But if WHI owed those duties to Lakeland, it was only by virtue of the Prescription Services Agreement.  Lakeland has not identified any statute or regulation which would have imposed such duties on WHI as to Lakeland if there were no contract.  According to the language of the Agreement, *see* Comp Ex 2 – and Lakeland's own reading of the Agreement, as evinced by its breach-of-contract claim, *see* Comp ¶¶ 33-34 – *the Agreement* obligated WHI to take measures which would have uncovered the Harts' alleged prescription-fraud scheme:  namely, "management" services, "quality management"

-24-

services, and "utilization management" services.

WHI would not have, and did not have, the two aforementioned duties of care as to Lakeland (Comp ¶¶ 37-38) "separate and distinct from" the contract.  As *Fultz* states, "If no independent duty exists, no tort action based on contract will lie." *Fultz*, 683 N.W.2d at 591; *see also Rinaldo's Const. Corp. v. Mich. Bell Tel. Co.*, 559 N.W.2d 647, 658 (Mich. 1997) ("Like the plaintiff in *Valentine*, "regardless of the variety of names [plaintiff gives the] claim, [plaintiff is] basically complaining of inadequate service and equipment . . . . Thus . . . there is no cognizable cause of action in tort.).[6]

**Accordingly, on this record, Lakeland's negligence claim (count 3) is not cognizable under Michigan common law.**  *See, e.g., Williams v. Aramark Mgmt. Servs. Ltd. P'Ship*, 2009 WL 529632, *4 (Mich. App. Mar. 3, 2009) (p.c.) (C.J. Saad, Davis, Servitto) (plaintiff alleged that she was injured after slipping on water left on floor by defendant maintenance company's employee; panel applied *Fultz* to affirm summary judgment for defendant because plaintiff failed "to establish that Aramark owed her a duty separate and distinct from its contract with the Inkster Public Schools" and Aramark's "duty to wet-mop the floor was specifically contemplated in the contract").[7]

_____

[6]

WHI proffers *Spengler v. ADT Sec. Servs., Inc.*, 505 F.3d 456 (6th Cir. 2007) (C.J. Boggs, <u>Martin</u>, Sutton), where our Court of Appeals reached a *result* that is consistent with this court's interpretation of Michigan common law.  But the Circuit did not even cite the Michigan Supreme Court's decision in *Fultz*, so its decision provides no guidance on how to apply *Fultz*.

[7]

Lakeland cites two unpublished cases where the Michigan Court of Appeals found that the plaintiff could maintain a tort action for the other contracting party's allegedly negligent performance of duties under the contract.  *See* P's Sur-Reply at 3-4 (discussing *Conant v. State Farm Fire & Cas. Co.*, 2006 WL 1411216, *3 (Mich. App. May 23, 2006) (insurance company's ivnestigation of claim and inspection of premises) and *Waun v. Universal Coin Laundry Machine, LLC*, 2006 WL 2742007, *8 (Mich. App. Sept. 26, 2006) (performance of "cost and income analysis")).  Such a determination is highly fact-dependent, however, and *Conant* and *Waun* are of no avail here because they involve very different factual allegations and contexts than are present in our case.  Moreover, because *Conant* and *Waun* are unpublished decisions, they have no

-25-

**Finally, the court notes unpersuasive cases cited by Lakeland to avoid this conclusion.**

**First, Lakeland quotes *Clark v. Dalman*, 150 N.W.2d 755 (Mich. 1967) for the proposition that "accompanying every contract is a common-law duty to perform with ordinary care the thing agreed to be done, and that a negligent performance constitutes a tort as well as a breach of contract."** P's Opp at 4-5. In other words, according to Lakeland, a contracting party necessarily and automatically has a tort cause of action to redress another party's failure to perform tasks under the contract with ordinary care. Whether or not that was the law in Michigan when the Supreme Court issued *Clark v. Dalman* 42 years ago, it is certainly not the law now. If the Michigan Supreme Court still believed that a contracting party can *always* sue in tort for less-than-ordinarily-careful performance of contracted tasks, it would not have directed courts that the "proper initial inquiry [is w]hether a particular defendant owes any duty at all to a particular plaintiff," which it immediately clarified meant "a legal duty separate and distinct from the contractual obligation." *Fultz*, 683 N.W.2d at 592. Lakeland fails to explain how to reconcile the aforementioned statement in *Clark* with this language in *Fultz*. *See* Def's Sur-Reply at 2-3.

In *Fultz*, the Supreme Court *necessarily* impliedly overruled *Clark v. Dalman* to the extent that it conflicts on this issue. U.S. District Judge Nancy Edmunds recognized this in *Irrer v. Milacron, Inc.*, 2007 WL 677902 (E.D. Mich. Mar. 6, 2007), where she stated,

> Plaintiffs' reliance on *Clark* . . . is misplaced. In *Fultz*, the Michigan Supreme Court may not have overruled the premises liability holding of *Clark*, but it did expressly reject the *Clark* Court's observation that "accompanying every contract is a common-law duty to perform with ordinary care the thing agreed to be done, and that a negligent performance constitutes a tort as well as a breach of contract."

*Id.* at *5 (quoting *Fultz*, 683 N.W.2d at 591 (quoting *Clark*, 150 N.W.2d at 760)); *see also Crespo*

---

precedential value in Michigan courts, and this court declines to follow them.

*v. Henkel Corp.*,2007 WL 2284257, *2 with n.1 (W.D. Mich. Aug. 7, 2007) (discussing *Irrer*, court remarked, "This Eastern District decision is not binding upon the undersigned, but the decision appears to be an accurate application of Michigan law.").

**Second, Lakeland relies on the Michigan Supreme Court's statement,** ***in 1956*, that** *"if a party undertakes to perform work, and proceeds on the employment, he makes himself liable for any misfeasance in the course of that work*; but if you undertake, and do not proceed on the work, no [tort cause of] action will lie against him for the nonfeasance."  P's Opp at 6 (quoting *Hart v. Ludwig*, 79 N.W.2d 895 (Mich. 1956) (emphasis added by plaintiff)).  Lakeland also points to the statement in the same decision that "the law imposes an obligation upon everyone who attempts to do anything, even gratuitously, for another, to exercise some degree of care and skill in the performance of what he has undertaken, *for non-performance of which duty an action* [in tort] lies."  P's Opp (quoting *Hart*, 79 N.W.2d 895).  These statements, too, are foreclosed by the Michigan Supreme Court's 2004 decision in *Fultz*.  Again, if the Michigan Supreme Court still believed that a contracting party may *always* be sued in tort for failing to adhere to the duty "to exercise some degree of care and skill in the performance of [the contractual duties] he has undertaken", it would not have directed courts to inquire *whether*, in the particular case, the allegedly negligent contracting party had a *non-contractual* duty (i.e., a duty actionable in tort) to exercise reasonable care and skill therein.

**Third, Lakeland relies on** ***Challenge Machinery Co. v. Mattison Mach. Works***, **359 N.W.2d 232 (Mich. App. 1984),** where the Michigan Court of Appeals denied summary judgment on a tort claim which alleged that a party negligently installed a grinding machine, even though the installer had contracted to do precisely that installation.  Lakeland's reliance on *Challenge*

-27-

*Machinery* is misplaced.  The very passage of *Challenge Machinery* quoted by Lakeland states only that "[n]egligent performance of an undertaking, even though ground upon a contractual relationship, *may* constitute an actionable tort as well as a breach of contract", not that negligent performance of a contractual undertaking is *always* actionable in tort.  Moreover, to the extent that *Challenge Machinery* – or any pre-*Fultz* decision of *any* court – stood for the absolute proposition, it would contradict and be overruled by *Fultz*.  Thus, it is of no avail for Lakeland to cite *A&F Ins. Co. v. Bolt*, 106 F.3d 155, 158 (6th Cir. 1997), or *Cargill, Inc. v. Boag Cold Storage Warehouse, Inc.*, 71 F.3d 545, 550 n.1 (6th Cir. 1995), as both predate *Fultz*.

**Fourth, Lakeland relies on *Dart Oil & Gas Corp. v. Expro Americas, LLC*, 2007 WL 3463250 (W.D. Mich. Nov. 15, 2007)** which stated that while "a tort action will not lie when based *solely* on non-performance of a contractual duty", "if there is some act of negligence or misfeasance distinct from breach of contract this court held that a claim of negligence under Michigan common law may proceed "if there is some active negligence or misfeasance distinct from breach of contract . . . the plaintiff will be able to support to [sic] a negligence claim." *Id.* at *2.  For this latter proposition, *Dart* directly cited only *Roskam Baking Co. v. Lanham Mach. Co., Inc.*, 71 F. Supp.2d 736, 744 (W.D. Mich. 1999), which, as a federal-court decision, has no precedential force in Michigan state courts.

Moreover, in *Dart* the Western District of Michigan held that *Fultz* applies only when the plaintiff or the defendant is *not* a party to the contract (sometimes referred to as "a direct party" rather than a "third party").  *Dart*, 2007 WL 3463250 at *3.  For this proposition, *Dart* cited *Garrett v. Sam H. Goodman Bldg. Co., Inc.*, No. 474 Mich. 948, 706 N.W.2d 202 (Dec. 8, 2005) (table, text in WestLaw).  *Garrett* was a one-page opinion that appears merely as a line entry in a table in the

-28-

Northwest Reporter.  *Garrett*'s full text, which is available only online, reads as follows:

> Disposition: On order of the Court, the application for leave to appeal the March 17, 2005 judgment of the Court of Appeals is considered and, pursuant to MCR 7.302(G)(1), in lieu of granting leave to appeal, we REVERSE the Court of Appeals['] affirmance of the trial court's grant of summary disposition in favor of defendant Goodman Building, and we remand this case to the Wayne [County] Circuit Court for further proceedings.  Summary disposition should not have been granted for defendant Goodman Building because it did not move for summary disposition.  Further, summary disposition based on the "open and obvious" doctrine was improper because neither defendant was the premises possessor. [citations omitted] *The Court of Appeals erred in applying Fultz v. Union-Commerce Associates . . . to defendant Goodman Building because it and plaintiff were in contractual privity.*

> In all further respects, leave to appeal is DENIED because we are not persuaded that the questions presented should be reviewed by this Court.

> We do not retain jurisdiction.

*Garrett*, 706 N.W.2d 202 (table entry, no reporter or WL page numbers) (emphasis added).

**But the Supreme Court's entry in *Garrett* lacks precedential value.**  The court consults

Michigan Court Rule 7.317, which is entitled Opinions, Orders, and Judgments of Supreme Court.

Rule 7.317(A), entitled Opinions of Court, provides, "An opinion must be written and bear the

writer's name or the label 'per curiam'.  Each Justice deciding a case must file an opinion."

Therefore, the Supreme Court entry in *Garrett* was not an opinion,[8] and Lakeland has not identified

---

[8]

Subchapter 7.200 of the Michigan Court Rules deals with the Court of Appeals.  MICH. CT. R. 7.215(C), entitled Precedent of Opinions, provides, in pertinent part, "An unpublished opinion is not precedentially binding under the rule of *stare decisis*."

By contrast, subchapter 7.300 of the Rules, which deals with the Supreme Court, does not address whether or not an unpublished opinion of the Supreme Court has precedential value – let alone a non-opinion entry like *Garrett* that is neither issued "*per curiam*" nor signed by any Justice.

As noted by Justice Cavanagh in *Williams v. Amerisure Ins. Co.*, 607 N.W.2d 78, 83 (Mich. 2000) (Cavanagh, dissenting on other grounds from denial of leave to appeal), MICH. CT. R. 7.321 provides that "[t]he reasons for denying leave to appeal, required by Const. 1963, art 6, § 6 and filed

any authority for according it precedential value.[9]

Indeed, no court, state or federal, has ever cited the Supreme Court's table entry and unpublished, unsigned text in *Garrett*.  On the contrary, several panels of the Michigan Court of Appeals have issued decisions, subsequent to that Court's December 2005 entry in *Garrett*, holding that *Fultz* is *not* confined to putative tort claims involving parties which were not signatories to the contract.  In *Churchill v. J.P. King Auction Co.*, 2008 WL 996441 (Mich. App. 2008) (p.c.) (P.J. Murray, Sawyer, Cavanagh), the panel stated:

> As noted by plaintiffs, *Fultz* involved a negligence claim brought by a nonparty to the contract.  However, *nothing in the Court's analysis suggests that the "separate and distinct" test would not also apply where a negligence claim is asserted by a party to the contract.*  On the contrary, in *Rinaldo's Constr.*, *supra* at 66-68, 78, on which the *Fultz* Court relied, a commercial client sued the telephone company, in tort, for alleged negligence in performing its contractual obligation to transfer the plaintiff's telephone service to its new address, resulting in economic damages to the plaintiff.  In the context of determining whether the plaintiff could maintain an action in tort, our Supreme Court stated that "the threshold inquiry is whether the plaintiff alleges violation of a legal duty separate and distinct from the contractual obligation."  *Id.* at 84.

*Id.* at *2 (emphasis added).  At least two other Court of Appeals panels have applied *Fultz* to affirm a judgment of "no cause of action" on a contracting party's putative tort claim against the other contracting party.  *See Engel Mgmt., Inc. v. Ford Motor Credit Co.*, 2009 WL 348828, *5 (Mich. App. Feb. 12, 2009) (p.c.) (P.J. Zhara, Cavanagh, Meter) ("While *Fultz* addressed a negligence claim

---

in the clerk's office, are not to be published, and are not to be regarded as precedent."  This does not apply to the *Garrett* entry's comment regarding *Fultz*, however, because that comment was on an issue on which the Supreme Court effectively *did* grant leave to appeal and substantively reviewed the Court of Appeals's decision.

[9]

*Cf. Williams v. Amerisure Ins. Co.*, 607 N.W.2d 78, 83 (Mich. 2000) (Cavanagh, J., dissenting on other grounds from denial of leave to appeal) ("[O]pinions not signed by a majority are not binding under *stare decisis*.") (citing *People v. Gahan*, 571 N.W.2d 503 (Mich. 1997)).

brought by a nonparty to the contract, the 'separate and distinct' analysis also applies in cases where, as here, a tort claim is asserted by a party to the contract.") (citing *Rinaldo's Const. Corp. v. Mich. Bell Tel. Co.*, 559 N.W.2d 647 (Mich. 1997)) and *Romulus v. Lanzo Const. Co,* 2008 WL 1829686 (Mich. App. Apr. 24, 2008) (p.c.) (P.J. Beckering, Sawyer, Fort Hood).[10]

Although *Churchill*, *Engel Management*, and *Romulus* are not binding, *see* MICH. CT. R. 7.215(C), the court finds them persuasive on this score. On the whole, the most sensible reading of *Fultz* is that it does not apply only to tort claims by or against non-parties to the contract. On one hand, *Fultz* seems to favor Lakeland's position when it states that "the 'separate and distinct' definition of misfeasance offers better guidance in determining whether a negligence action based on a contract *and brought by a third party to that contract* may lie because it focuses on the threshold question of duty in a negligence claim." *Fultz*, 683 N.W.2d at 592 (emphasis added). The decision also states that "the lower courts should analyze tort actions based on a contract and brought by a plaintiff who is not a party to that contract by using a 'separate and distinct' mode of analysis." *Id.*

But two factors suggest that the Supreme Court's use of the "third party" language was not intended to qualify the general proposition; i.e., it was included only because the slip-and-fall plaintiff there happened not to be a party to the snow-removal contract. First, as noted by the Michigan Court of Appeals in *Churchill*, 2008 WL 996441 at *2, *Fultz* relied on *Rinaldo's* (Mich. 1997), which was a direct-party case, without intimating that that difference was material to its analysis. The second reason for reading *Fultz* this way is more direct and significant. The Supreme

---

[10]

Together, these three panel opinions represent the viewpoint of seven of the Michigan Court of Appeals's twenty-eight members, all of whom are still on that court. *See* http://coa.courts.mi.gov/court/judges/rctjudges.htm retrieved March 24, 2009.

Court concluded *Fultz* with an unqualified holding that drew no distinction between third-party tort

plaintiffs/defendants and direct-party plaintiffs/defendants:

> To summarize, if defendant fails or refuses to perform a promise, the action is in contract. If defendant negligently performs a contractual duty or breaches a duty arising by implication from the relation of the parties created by the contract, the action may be either in contract or in tort. In such cases, however, no tort liability arises for failing to fulfill a promise in the absence of a duty to act that is separate and distinct from the promise made.

*Fultz*, 683 N.W.2d at 469-70.

## ORDER

WHI's Motion to Dismiss Count 3 for failure to state a claim [document #11] is **GRANTED.**

Count 3, the negligence claim, is **DISMISSED.**

No later than Monday, April 20, 2009, WHI **SHALL FILE** an answer to counts one and two.

This is not a final order, so it is not immediately appealable. *See Griffin v. Reznick*, – F. Supp.2d –, 2008 WL 5110528, *10 (W.D. Mich. Dec. 2, 2008) ("'Absent certification of an interlocutory appeal under 28 U.S.C. § 1292(b) or Fed. R. Civ. P. 54(b), an order disposing of fewer than all parties or claims is nonappealable.'") (quoting *Bd. of Ed. of Avon Lake City Sch. Dist. v. Patrick M.*, 215 F.3d 1325, 2000 WL 712500, *4 n.5 (6th Cir. May 24, 2000) (citing *Wm. B. Tanner Co. v. US*, 575 F.2d 101, 102 (6th Cir. 1978))).

 **IT IS SO ORDERED** this 26th day of March 2009.


      /s/ Paul L. Maloney   
      Honorable Paul L. Maloney
      Chief United States District Judge